UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIJANA WICKER, individually and on behalf of other members of the general public similarly situated<br><br>Plaintiff,<br><br>v.<br><br>ASC PROFILES LLC, a Delaware company; STEELSCAPE, LLC, a California company; BLUESCOPE BUILDINGS NORTH AMERICA, INC., a Delaware corporation and DOES 1 through 100, inclusive;<br><br>Defendant. | No. 2:19-cv-02443-TLN-KJN<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR REMAND** |

This matter is before the Court pursuant to Plaintiff Kijana Wicker's ("Plaintiff") Motion to Remand. (ECF No. 8.) Defendant ASC Profiles LLC, Steelscape LLC, Bluescope Buildings North America, Inc. (collectively, "Defendants") filed an opposition. (ECF No. 12.) Plaintiff filed a reply. (ECF No. 13.) Having carefully considered the briefing filed by both parties, the Court hereby DENIES Plaintiff's Motion to Remand. (ECF No. 8.)

///

///

I. **FACTUAL AND PROCEDURAL BACKGROUND**

Defendants employed Plaintiff and other individuals as hourly-paid or non-exempt employees within the State of California. (ECF No. 1-3 at 11.) On October 30, 2019, Plaintiff filed this putative class action in Sacramento County Superior Court, asserting the following claims: (1) failure to pay overtime wages, Cal. Lab. Code §§ 510 and 1198; (2) meal period violations, *id.* §§ 226.7, 512(a); (3) rest break violations, *id.* § 226.7; (4) failure to pay minimum wages, *id.* §§ 1194, 1197; (5) failure to timely pay wages upon termination, *id.* §§ 201, 202; (6) wage statement penalties, *id.* § 226(a); and (7) unfair business practices, Cal. Bus. & Prof. Code § 17200. (*See* ECF No. 1 at 2, ECF No. 1-3 at 5, 15–25.)

On December 5, 2019, Defendants removed the case to this Court pursuant to the Class Action Fairness Act ("CAFA"). (ECF No. 1 at 1–2.) To support their contention that the amount in controversy exceeds the requisite $5 million under CAFA, Defendants assessed Plaintiff's state court complaint. (*See id.*; ECF No. 1-3 at 5–29.) On January 6, 2020, Plaintiff moved to remand, challenging Defendants' calculations. (ECF No. 8.) Defendants submitted an opposition with additional evidence (ECF No. 12), and Plaintiff filed a reply (ECF No. 13).

II. **STANDARD OF LAW**

A civil action brought in state court, over which the district court has original jurisdiction, may be removed by the defendant to federal court in the judicial district and division in which the state court action is pending. 28 U.S.C. § 1441(a). CAFA gives federal courts original jurisdiction over certain class actions only if: (1) the class has more than 100 members; (2) any member of the class is diverse from the defendant; and (3) the amount in controversy exceeds $5 million, exclusive of interest and costs. *See* 28 U.S.C. §§ 1332(d)(2), (5)(B).

Congress enacted CAFA "specifically to permit a defendant to remove certain class or mass actions into federal court" and intended courts to interpret CAFA "expansively." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). As a general rule, removal statutes are to be strictly construed against removal. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). However, "no antiremoval presumption attends cases invoking CAFA." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014). Nonetheless, "[i]f at any time before final

2

judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded" to state court. 28 U.S.C. § 1447(c).

A defendant seeking removal under CAFA must file in the federal forum a notice of removal "containing a short and plain statement of the grounds for removal." *Dart Cherokee*, 574 U.S. at 83 (quoting 28 U.S.C. § 1446(a)). The notice of removal "need not contain evidentiary submissions," rather a defendant's "plausible allegation that the amount in controversy exceeds the jurisdictional threshold" suffices. *Id.* at 84, 89. When "a defendant's assertion of the amount in controversy is challenged . . . both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* at 88. The parties may submit evidence outside the complaint including "affidavits or declarations or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Hender v. Am. Directions Workforce LLC*, No. 2:19-cv-01951-KJM-DMC, 2020 WL 5959908 *2 (E.D. Cal. Oct. 7, 2020) (citing *Singer v. State Farm Mut. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)).

When "the defendant relies on a chain of reasoning that includes assumptions to satisfy its burden of proof, the chain of reasoning and the underlying assumptions must be reasonable, and not constitute mere speculation and conjecture." *Id.* (citing *Ibarra*, 775 F.3d at 1197-99). "CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." *Ibarra*, 775 F.3d at 1198. Then "the district court must make findings of jurisdictional fact to which the preponderance standard applies." *Dart Cherokee*, 574 U.S. at 89 (internal citation omitted).

**III.   ANALYSIS**

The parties here "do not contest CAFA's jurisdiction requirements of minimum diversity and class numerosity" — the sole dispute is "whether CAFA's requirement that the amount in controversy exceeds $5 million is met." *See Ibarra*, 775 F.3d at 1196–97; *Arias v. Residence Inn by Marriot*, 936 F.3d 920, 924 (9th Cir. 2019). To determine the amount in controversy, the Court looks first to the complaint. *Ibarra*, 775 F.3d at 1197.

Here, Plaintiff brought a class action and alleges the amount in controversy is less than $75,000. (ECF No. 1-3 at 6.) Relying on the complaint, Defendants' notice of removal evaluated the alleged unpaid overtime, meal break, and rest period violations and concluded the aggregated amount in controversy exceeds $5 million. (ECF No. 1 at 4–6.) Specifically, Defendants estimated an amount in controversy over $5,886,816, arguing Plaintiff's first three claims "yield an amount . . . well in excess of CAFA's requirements." (*Id.* at 6.) Defendants submitted the declaration of Amy Hughes, the Director of Compensation and Benefits at BlueScope Buildings North America, Inc., to support their assertions. (ECF No. 1-7.)

Plaintiff argues Defendants do not meet their burden because they rely on "unsupported assumptions." (*See generally* ECF No. 8, ECF No. 13.) Because Plaintiff challenges Defendants' estimate, Defendants bear the burden to establish jurisdiction by a preponderance of the evidence. *Dart Cherokee*, 574 U.S. at 87–88; *see also Ibarra*, 775 F.3d at 1197. Accordingly, Defendants must present "more than a plausible case to show it satisfies the jurisdictional prerequisite." *Hender*, 2020 WL 5959908, at *2. In response to Plaintiff's challenge, Defendants submitted additional evidence in their opposition.[1] (*See* ECF No. 12.) In their opposition, Defendants calculated the alleged damages for the unpaid overtime, meal and rest break violations, wage statement penalties, waiting-time penalties, and potential attorney's fees, placing the aggregated amount in controversy at $8,483,752.70. (*Id.* at 22.)

Because the Court finds a reasonable estimate of Plaintiff's first, second, third, and sixth claims amounts to greater than $5 million, the Court does not need to determine the amount of Plaintiff's other claims or the attorney's fees.

        A.    <u>Failure to Pay Overtime Wages (Claim One)</u>

Plaintiff alleges Defendants violated California Labor Code § 510's overtime compensation rules. (ECF No. 1-3 at 27.) Defendants calculated a total amount in controversy of $2,149,599 for unpaid overtime, which they reached by multiplying (a) the number of

---

[1] Defendants attach the following evidence in their opposition to Plaintiff's Motion for Remand (ECF No. 12): the Declaration of Tanya Bennett (ECF No. 12-1); the Declaration of Brenda Eubanks (ECF No. 12-2); the supplemental Declaration of Amy Hughes (ECF No. 12-3); the Declaration of Todd L. Nunn (ECF No. 12-4); and PAGA letters (ECF No. 12-5).

workweeks, (b) the average hourly base rate, and (c) 1.5 (representing one overtime violation per week). (ECF No. 12 at 13–14.) Defendants calculated that amount for each company and year. (*Id.*) Defendants used a 20 percent violation rate based on Plaintiff's complaint alleging "a pattern and practice" of "Defendants fail[ing] to pay overtime wages to Plaintiff and other class members for all hours worked." (*Id.* at 13.)   In response, Plaintiff argues Defendants' calculation is based on "speculation and conjecture" as it "fails to provide any facts relating to the number of overtime hours worked by putative class members or how many employees were even entitled to receive overtime compensation." (ECF No. 8 at 13.)

The Court finds Defendants' use of the 20 percent violation rate is reasonable.  Indeed, "other courts have approved, persuasively, a 20 percent violation rate when a plaintiff, as plaintiff does here, alleges a 'pattern and practice' of defendants' failing to provide overtime compensation." *Hender*, 2020 WL 5959908, at *8 (citations omitted) (finding defendants' calculation based on a 20 percent violation rate, "a conservative estimate allowing for the possibility that not every putative class member worked overtime").  Moreover, Defendants "need not provide information proving up their liability to demonstrate the amount in controversy," as "such a requirement would contradict precedent." *Id.*; *see Arias*, 936 F.3d at 927 (finding "assumptions made part of the defendant's chain of reasoning need not be proven; they instead must only have 'some reasonable ground underlying them'"); *see also Cavada v. Inter-Cont'l Hotels Grp., Inc.*, No. 19-cv-1675-GPC(BLM), 2019 WL 5677846, at *4 (S.D. Cal. Nov. 1, 2019) ("Defendants are not required to 'comb through [their] records to identify and calculate the exact frequency of violations' and essentially prove the alleged violations").

Defendants' reliance on the 20 percent violation rate, based on Plaintiff's complaint alleging Defendants' "pattern and practice" of failing to pay overtime wages, is a reasonable assumption.  Accordingly, the Court considers Defendants' estimate of $2,149,599 in unpaid overtime compensation as part of the amount in controversy for CAFA jurisdiction purposes.

///

///

///

B.    Meal and Rest Period Violations (Claim Two and Three)

Plaintiff alleges Defendants violated California Labor Code's meal and rest period rules. (ECF No. 1-3 at 17–20.) Defendants calculated a total amount in controversy of $2,866,133 for the meal and rest period violation claims, which they reached by multiplying (a) the number of workweeks by (b) the average hourly base rate (by company and year) for both a meal period and a rest break violation. (ECF No. 12 at 16–17.) Defendants argue Plaintiff's allegation of Defendants' "pattern and practice" of violating class members' meal and rest breaks supports a violation rate of one meal period violation per week (a 20 percent violation rate) and one rest break violation per week (a 10 percent violation rate). (*Id.* at 14–15.) Additionally, Defendants rely on PAGA letters which allege Defendants "routinely required [Plaintiff] and other hourly-paid or non-exempt aggrieved employees to interrupt, cut short, and/or delay their meal and/or rest breaks." (*Id.* at 16.)

Plaintiff again argues Defendants' calculation is "implausible because it is based entirely on unsupported assumptions." (*See* ECF No. 8 at 8–12.) Plaintiff argues Defendants fail to provide any evidentiary support regarding "how frequently putative class members missed meal periods, were offered late meal periods, or were offered meal periods of a duration shorter than required by law." (*Id.* at 11; ECF No. 13 at 2.) Plaintiff also contends Defendants failed to indicate how long putative class members worked per shift, which undercuts Defendants' argument that putative class members were even eligible for a meal and rest period. (*Id.*)

Here, persuasive authority supports Defendants' calculation of one missed meal break and one missed rest break per week based on Plaintiff's allegation that Defendants had "a policy and practice" of denying employees meal and rest breaks. *Nunes v. Home Depot U.S.A., Inc.*, No. 2:19-cv-01207-JAM-DB, 2019 WL 4316903, at *2 (E.D. Cal. Sept. 12, 2019) (finding defendant's assumption of one missed meal break and one missed rest break per week to be reasonable based on plaintiff's allegation that defendant had a "uniform policy, practice, and procedure" of restricting rest breaks); *see also Hender*, 2020 WL 5959908, at *6 (finding other courts throughout the circuit also apply a 20 percent violation rate for purposes of calculating the amount in controversy for meal and rest break claims). For example, the court in *Nunes*

6

1  employed a similar calculation as Defendants here to determine meal and rest break violations by
2  "multipl[ying] the relevant values (number of workweeks x average hourly pay x one violation
3  per week for each claim)." *Nunes*, 2019 WL 4316903, at *3. Moreover, meal and rest period
4  violations can occur with both full-time and part-time employees, which further supports
5  Defendants' assumption of a 20 percent violation rate. *See Hender*, 2020 WL 5959908, at *6.

6  Requiring Defendants to provide specific evidentiary support would "run afoul of the
7  Ninth Circuit's ruling in *Arias*, [which] overrul[ed] the district court's imposition of a
8  requirement on defendants to 'prove it actually violated the law at the assumed rate,' when in fact
9  'assumptions made part of the defendant's chain of reasoning need not be proven.'" *Id.* (citing
10 *Arias*, 936 F.3d at 927).

11 Accordingly, the Court considers Defendants' estimate of $2,866,133 in meal and rest
12 period violations as part of the amount in controversy for CAFA purposes.

### C. Wage Statement Penalties (Claim Six)

14 Plaintiff further alleges Defendants failed to provide employees with accurate wage
15 statements. (ECF No. 1-3 at 22–23.) Under California law, when an employer fails to provide an
16 accurate wage statement, an employee may seek penalties of $50 for the initial pay period in
17 which a violation occurs and $100 for each violation in a subsequent pay period, not to exceed an
18 aggregate penalty of $4,000 per employee. Cal. Lab. Code § 226(e).

19 Defendants calculate a total amount in controversy of $737,100 for the alleged inaccurate
20 wage statements. (ECF No. 12 at 20–21.) In order to calculate this amount, Defendants
21 determined the number of putative class members who worked during the relevant one-year
22 limitation period and the wage statements issued for that year. (*Id.*) Defendants then multiplied
23 the number of employees by the $50 initial violation amount and multiplied the remainder of the
24 workweeks by the $100 violation amount (by company). (*Id.*) In support of their calculations,
25 Defendants relied on Plaintiff's complaint which alleges "Defendants failed to provide complete
26 or accurate wage statements." (*Id.*) Plaintiff argues Defendants' calculation is inaccurate since
27 the complaint states that, "Plaintiff and other class members (but not all) are entitled to recover."
28 (ECF No. 13 at 6.) Plaintiff therefore contends, "Defendant[s] completely ignore[] the plain

7

language of the allegations which unequivocally states that not all putative class members received non-compliant wage statements." (*Id.*)

In the instant case, the Court finds Defendants have shown it is more likely than not that the amount in controversy for wage statement penalties is $737,100. The wage statement penalty calculation "suffice[s] for removal for the same reasons as d[oes] defendants' calculation for overtime wages and meal and rest violations." *Hender*, 2020 WL 5959908, at *6 (citing *Dart Cherokee*, 574 U.S. at 81). Because the previous meal and rest break estimates are reasonable, "it is reasonable to assume class members suffered at least one violation (e.g. one missed meal or rest break) per pay period." *See Nunes*, 2019 WL 4316903, at *2–3 (holding a 100 percent violation rate as a reasonable assumption); *see also Cavada*, 2019 WL 5677846, at *8 (finding that "since one missed meal and rest period was reasonable, that would mean that every wage statement was inaccurate and subject to penalties"). Therefore, because it is more likely than not that putative class members each suffered one meal and one rest break violation per week, then Defendants' 100 percent wage statement violation rate against each terminated class member is reasonably supported by the evidence.

Accordingly, the wage statement penalties calculation is based on a reasonable assumption. The Court considers Defendants' estimate of $737,100 in wage statement penalties as part of the amount in controversy for CAFA purposes.

In sum, Defendants' calculations in the Notice of Removal, supported by the aforementioned briefs and declarations, reasonably and appropriately yield an amount in controversy of $5,752,832 for Plaintiff's first, second, third, and sixth claims. Therefore, the Court finds Defendants have proven by a preponderance of the evidence that the amount in controversy in this case exceeds $5 million as required by CAFA.

///
///
///
///
///

### IV. CONCLUSION

For the reasons set forth above, the Court DENIES Plaintiff's Motion to Remand. (ECF No. 8.) The parties are ORDERED to file a joint status report within twenty (20) days of the electronic filing of this Order to aid the Court with the issuance of an amended scheduling order.

IT IS SO ORDERED.

DATED: March 29, 2021

Troy L. Nunley
United States District Judge